O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

M.V.F.,

                  Petitioner,

      v.

ERNESTO SANTACRUZ, JR.; TODD M. LYONS; KRISTI NOEM; and PAMELA BONDI,

             Respondents.

Case No.:  2:25-cv-11700-MEMF-E

**ORDER GRANTING IN PART PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER [DKT. NO. 3]**

      Before the Court is the Application for Ex Parte Temporary Restraining Order filed by Petitioner M.V.F. Dkt. No. 3 ("Application"). Petitioner requests that this Court enter a temporary restraining order and a preliminary injunction. For the reasons stated below, the Motion is GRANTED IN PART.

1

## I.    **Background**

### A.  **Factual Background**[1]

Petitioner is a citizen of Honduras. Dkt. No. 1 ¶ 19 ("Petition"). He entered the United States on September 7, 2016. *Id.* At the time, he was thirteen years old. *Id.* The next day, he received a Notice to Appear requiring him to report to immigration court. *Id.* ¶ 20; *see also* Declaration of Madhavi Narayanan, Dkt. No. 1 at 20 ("Narayanan Decl."), Ex. 1 (the Notice to Appear). He was subsequently released on his own recognizance and placed into removal proceedings. Petition ¶ 2, 23. He complied with all the requirements of his release, including regular reports to an ICE office. *Id.* ¶ 21.

Upon arrival in the United States, Petitioner sought asylum with his mother. *Id.* ¶ 23. But in 2019, an immigration judge denied their applications for relief and ordered them removed. *Id.* ¶ 4, 23. In 2021, Petitioner appealed to the Board of Immigration Appeals, which dismissed Petitioner's appeal. In 2023, Petitioner appealed to the United States Court of Appeals for the Ninth Circuit, which denied review of Petitioner's case. *Id.*

On October 29, 2025, Petitioner was arrested in Downey, California.[2] Declaration of Luz Robles, Dkt. No. 8-1 ("Robles Decl.") ¶ 12; Dkt. No. 9 at 6 n.1 ("Reply"). He was arrested for inflicting corporal injury on a spouse, in violation with California Penal Code section 273.5(A). Robles Decl. ¶ 11. The charge has since been dismissed. Reply at 6 n.1.

On December 9, 2025, Petitioner reported for a scheduled appointment with ICE. *Id.* ¶ 5. At that appointment, ICE took petitioner into custody. *Id.* ICE did not give Petitioner prior notice, cite new circumstances that justified his re-detention, or schedule Petitioner for a hearing. *Id.*

/ / /

/ / /

/ / /

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] This factual background is not included in the Petition. Instead, Respondents introduce it in Opposition, and Petitioner addresses it in Reply.

### B.  Procedural History

On December 10, 2025, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See* Petition. On the same day, Petitioner filed the Application. This Court accordingly set an expedited briefing schedule. *See* Dkt. No. 6. On December 11, 2025, Respondents filed an opposition brief. *See* Dkt. No. 8 ("Opp." or "Opposition"). On December 12, 2025, Petitioner filed a reply brief. *See* Reply. This Court has reviewed the filings and deemed this matter appropriate for decision without scheduling a hearing. L.R. 83-9.1.1.

### II.  <u>Applicable Law</u>

### A.  Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670,

675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. sections 1221 to 1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

Once an immigrant has been "released under an order of supervision," the following laws govern. 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### C. 8 U.S.C. section 1226(c) and the Laken Riley Act

"The 'Attorney General *shall* take into custody any [noncitizen[3]] who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v.*

---

[3] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

*Rodriguez*, 583 U.S. 281, 289 (2018) (quoting 8 U.S.C. § 1226(c)(1)) (emphasis added). In January

2025, the Laken Riley Act added one such category subject to mandatory detention under section

1226(c). Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). The new category mandates

detention for a noncitizen who:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

> (ii) is charged with, *is arrested for*, is convicted of, admits having committed, or admits committing *acts which constitute the essential elements of* any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or *any crime that results in death or serious bodily injury to another person*[.]

8 U.S.C. § 1226(c)(1)(E)(i)–(ii) (emphasis added).

The elements of a violation of California Penal Code 273.5 are as follows:

> (a) A person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000), or by both that fine and imprisonment.

> (b) Subdivision (a) shall apply if the victim is or was one or more of the following:

> > (1) The offender's spouse or former spouse.

> > (2) The offender's cohabitant or former cohabitant.

> > (3) The offender's fiance, or someone with whom the offender has, or previously had, an engagement or dating relationship, as defined in paragraph (10) of subdivision (f) of Section 243.

> > (4) The mother or father of the offender's child.

> (c) Holding oneself out to be the spouse of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section.

> (d) As used in this section, "traumatic condition" means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, *whether of a minor or serious nature*, caused by a physical force. For purposes of this section, "strangulation" and "suffocation" include impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck.

Cal. Pen. Code § 273.5 (emphasis added). California's Criminal Jury Instructions explain, in relevant part:

> To prove that the defendant is guilty of this crime, the People must prove that:
> 1.  The defendant willfully [and unlawfully] inflicted a physical injury on (his/her) ([former] spouse/[former] cohabitant/the (mother/father) of (his/her) child)/someone with whom (he/she) had, or previously had, an engagement or dating relationship); AND
> 2. The injury inflicted by the defendant resulted in a traumatic condition.
>
> Someone commits an act willfully when he or she does it willingly or on purpose. A traumatic condition means a condition of the body—such as a wound, external injury, or internal injury[, including injury as a result of strangulation or suffocation]— *whether of a minor or serious nature*, caused by a physical force.

CALCRIM No. 830 (emphasis added).

### III.    <u>Discussion</u>

#### A.  This Court has jurisdiction.

Respondents argue that, "[t]o the extent [Petitioner] contests the decision to enforce [his final removal order] via arrest, that runs afoul of 8 U.S.C. § 1252(g)," and that "Sections 1252(a)(5) and 1252(b)(9) also bar review." Opp. at 3-5. Petitioner counters that this Court has jurisdiction under 8 U.S.C. § 2241. Reply at 1-4. For the reasons below, this Court finds that Section 2241 grants this Court jurisdiction, and none of Respondents' proffered jurisdictional bars apply here.

As this Court has explained *supra*, it lacks authority to enjoin the Government or its subdivisions to "take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, *Aleman Gonzalez*, 596 U.S. at 550. But it may still enjoin the operation of statutory provisions as they apply to an individual noncitizen in removal proceedings. *Id.* Put another way, the Supreme Court has recognized that this Court's jurisdiction to enter individual habeas relief, where appropriate, does not improperly bear on the Government's ability to carry out immigration policy decisions.

As a general matter, in arguing this Court lacks jurisdiction, Respondents appear to inaccurately describe the question posed to this Court. They note, and then justify, that "Congress has unambiguously stripped federal courts of jurisdiction over challenges to the execution of final

1  removal orders." Opp. at 1. But this case does not challenge the execution of a final removal order—

2  the Petition merely alleges that, when Respondents redetained Petitioner, they did not afford him the

3  process he was due. That inquiry is entirely independent of whether the government may execute the

4  final removal order.

5    With this framework in mind, the three statutes that Respondents argue prevent this Court

6  from exercising jurisdiction are inapposite.

7    Section 1252(g) states that no court may hear a nonimmigrant's case "arising from the

8  decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute

9  removal orders against an alien." Respondents suggest that this statute "bars any District Court

10  Claims—in habeas or otherwise—that would prevent or delay the government from executing that

11  final removal order." Opp. at 1. But the Supreme Court has rejected "the unexamined assumption

12  that § 1252(g) covers the universe of deportation claims," and has instead endorsed a "much

13  narrower" read that is confined to the "three discrete actions" listed above. *Reno*, 525 U.S. at 482.

14  With this reading in mind, Section 1252(g) does not apply here. Neither the instant Application nor

15  the Petition stem from (or challenge) the commencement of proceedings, adjudication of a case, or

16  the execution of a removal order. Instead, they seek that this Court find that the *manner* in which

17  Petitioner was redetained was in violation of his constitutional and statutory protections.

18  Respondents cite no authority for their proposed broad reading of Section 1252(g), particularly the

19  idea that it would prevent *any* claim that had the effect of delaying the government's execution of a

20  final removal order. And, even if they did, this Court is not inclined to find that this argument would

21  be relevant: Nothing in this Court's ruling today (or Petitioner's requested relief) prevents

22  Petitioner's redetention or removal.

23    Nor do Respondents' other two suggested jurisdictional bars operate in this case. Section

24  1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance

25  with this section shall be the sole and exclusive means for judicial review of an order of removal

26  entered or issued under any provision of this chapter." And Section 1252(b)(9) states that "[j]udicial

27  review of all questions of law and fact . . . arising from any action taken or proceeding brought to

28  remove an alien from the United States . . . shall be available only in judicial review of a final order

under this section." The Ninth Circuit has clarified that these two provisions only "channel judicial review *over final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). And, again, Petitioner has not requested this Court to review his removal order itself. Neither the Petition nor the TRO before this Court contest the basis of the final removal order; in fact, it appears that Petitioner has already exercised the avenues available to him for that purpose. *See* Petition ¶ 23 (describing appeals of Petitioner's removal order to the BIA and the Ninth Circuit). Nor does this Court intend to call into question the merits of the Government's reasons, or the basis of the Government's authority, to remove Petitioner.

In sum, this Court concludes that it has jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate.

### B. Applying the *Winter* factors, Petitioner is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition advances three grounds upon which a temporary restraining order should be granted: First, Petitioner argues that his detention violated his Fifth Amendment right to procedural and substantive due process. Petition at 12-14. Second, he argues that his detention violated relevant regulations—namely, 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13—because the Government did not follow the requisite steps to revoke Petitioner's release: notice of the reasons for the detention and a prompt informal interview. *Id.* at 14-15. Third, he argues that his redetention was arbitrary and capricious, and lacked consideration of his individualized facts and circumstances, in violation of the APA. The Court applies the *Winter* factors to Petitioner's claims below.

/ / /

/ / /

i.   The first *Winter* factor, likelihood of success on the merits, is met.

Petitioner argues that he is entitled to release because the Government violated both due process and INA regulations by re-detaining him without notice and an opportunity to be heard. For the reasons below, this Court finds he is likely to succeed on the merits of this claims.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Importantly, the Respondents do not meaningfully dispute that Petitioner has the right to notice and the opportunity to be heard on his redetention, consistent with the applicable regulations. Instead, they focus on the fact that the redetention decision is discretionary. Opp. at 6-7. Be that as it may, this does not mean that Petitioner lacks the right to notice and the opportunity to be heard on this discretionary decision. And perhaps more importantly, the Government fails to justify why it should be permitted to exercise its discretion under the regulation in a way to contravenes the requirement of the same regulation to provide notice and an opportunity to be heard. Respondents' only mention of due process in the Opposition is a conclusory allegation that "Petitioner has no due process right to additional procedures, including a pre-detention hearing, regarding his imminent removal." Opp. at 2. In support, Respondents note only that Petitioner's detention is statutorily authorized; as this Court has already explained, whether detaining (and even removing) Petitioner is permissible is not the question before this Court. Moreover, Respondents at no point address the protections laid out in section 241 (discussed below), which appear to this Court to establish due process procedures for detainees. To that end, it appears to this Court that Petitioner has a likelihood of success on his constitutional claim.

This Court next turns to the statutory claim. In light of *J.G.G.*, it appears that the applicable laws, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has determined it will meet the due process rights of putative detainees. Under the former, an immigrant who has been released under an order of supervision "will be notified of the reasons for revocation of

his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* And under Section 241.4(*l*)(i).

Respondents appear to admit that these statutes govern Petitioner's case. *See* Opp. at 7 ("The government is thus broadly authorized to exercise its discretion to revoke such release pursuant to 8 C.F.R. § 241.1(l)(1), and 8 C.F.R. § 241.4(l)(2)."). This is the only mention in their brief of either statute; Respondents make no argument that these statutes do not control, so it appears to this Court that they do not oppose Petitioner's argument that he is likely to succeed on the merits. Moreover, this Court declines to take the extraordinary position that these individuals are not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. This Court therefore finds that Petitioner is likely to succeed on the merits of his claim that detention is only permitted upon notice and an opportunity to be heard.

This Court's conclusion is consistent with that of other district courts. Particularly instructive is the Court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. Because there was no interview opportunity following the notice, the Court found that the procedural deficiencies rose to the level of a procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Lastly, based on the same facts discussed above, Petitioner has demonstrated a likelihood of success on his claim under the APA. "Section 706(2)(A) of the APA provides that a 'reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). "Agency action is valid 'if a reasonable basis exists for [the agency's] decision.' *Id.* (citing *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006)). Though this review is deferential, courts cannot "infer an agency's reasoning from mere silence." *Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005). Petitioner argues that this claim is based upon the fact that he was "arbitrarily and capriciously re-detain[ed]" without "notice and an informal interview." Petition ¶ 58. Respondents do not offer rebuttal evidence that an individual consideration *did* take place, or that Petitioner was granted an informal interview and notice of the change in circumstances that led to his re-detention.[4] Indeed, the Opposition does not appear to address Petitioner's APA claim at all. To that end, based on this record, Petitioner has shown a likelihood of success on the merits in demonstrating that the decision to redetain him without statutorily prescribed due process was arbitrary and capricious, thereby violating the APA.

Today, this Court must determine whether Petitioner is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is. In sum, the first *Winter* factor is met.

/ / /

---

[4] The closest that it appears Petitioner got to an individualized determination of his circumstances, as both the APA and the relevant ICE regulations entitle him to receive, is the articulation that M.V.F. was subject to mandatory detention because he had a final order of removal, *see* Narayanan Decl. ¶ 11, and because he had been arrested for a crime in June 2025 that requires mandatory detention, *see id.* ¶ 12. But these are not rational bases to mandatorily detain Petitioner because neither requires his mandatory detention. First, it appears that the June 2025 arrest cited was in error; neither party alleges that Petitioner was arrested in June 2025. Second, to the extent ICE referred (or intended to refer) to Petitioner's October 2025 arrest for domestic violence—a charge that has now been dismissed, *see* Reply at 6 n.1—it does not appear that that crime requires mandatory detention at all. *See supra* Section III.C. And being subject to a final removal order does not require mandatory detention. *See* 8 U.S.C. § 1231(a)(1)-(3) (establishing that, if a noncitizen is not removed within the ninety-day period following the final removal order, the noncitizen is subject to supervised release).

ii.  <u>The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.</u>

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents argue that Petitioner's detention does not qualify as irreparable harm because he is subject to an unchallenged final order of removal.[5] Opp. at 8. But, as discussed above, the Government's discretion to issue removal orders is not at issue here. Instead, Petitioner argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Thus, as this Court has already found that Petitioner's has a sufficient likelihood of success on the merits of both of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met.

iii.  <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

---

[5] Notably, Respondents' acknowledgement that Petitioner is not challenging his final order of removal is at odds with their arguments on jurisdiction—namely, that this case implicitly seeks to challenge Petitioner's removal and is therefore improper.

The balance of equities appears to tilt in Petitioner's favor. It is true, as Respondents note, that the Government has a strong interest in the enforcement of federal immigration law. *See* Opp. at 9 (collecting cases). But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Respondents argue that their "public interest outweighs Petitioner's private interest" in this matter." Opp. at 9. But "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). In sum, the third and fourth *Winter* factors are met here.

### C.  A release order is the appropriate relief.

Respondents further argue that, even if a procedural deficiency has taken place, "the appropriate remedy" would be to "remedy the specific procedural deficiency that might be established." Opp. at 7. For the reasons below, this Court finds that a release order is the appropriate preliminary relief.

First, Petitioner's prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g.*, Reply at 9-10 (collecting cases); *F.M.V. v. Wofford*, No. 1:25-CV-01381-KES-SAB (HC), 2025 WL 3083934, at *7 (E.D. Cal.

Nov. 4, 2025) (same). On this point, the Government's citations to nonbinding cases that decided differently miss the mark. In *Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540 (W.D. Wash. Dec. 4, 2018), the petitioner's removal was imminent, which has not been shown here: "ICE had procured a travel document and scheduled Mr. Ahmad's removal." *Id.* at* 5. This matters because 8 C.F.R. § 241.13(i)(2) requires a change in circumstances leading to a significant likelihood of the noncitizen's removal in the reasonably foreseeable future. So, though the Court found that the respondents had not complied with the informal interview requirement, it was clear that the noncitizen's removal was likely imminent. *Id.* at *6. And in *Doe v. Smith*, No. 18-11363-FDS, 2018 WL 4696748 (D. Mass. Oct. 1, 2018), the Court reasoned that release was appropriate because that case was not "a situation where a prompt interview might have led to [the petitioner's] immediate release." *Id.* at *9. But, as this Court next explains, the opposite is true here, so the logic does not control here.

Second, it appears that this *is* a situation where a prompt interview may have led to Respondents not detaining Petitioner at all. Respondents offer two bases for mandatory detention for Petitioner: That he is subject to a final order of removal, Opp. at 6, and that he has been arrested for a qualifying crime under the Laken Riley Act, *id.* at 2. But neither appears to require Respondents to detain Petitioner. As to the first justification, detention is not mandatory for those subject to a removal order. *See* 8 U.S.C. §§ 1231(a)(1)(A); *id.* § 1231(a)(3) (establishing that detention is only mandatory for ninety days, after which time the immigrant is released with supervision). An interview might have clarified that Petitioner, who has complied with the conditions of his release for nearly a decade, was not subject to mandatory detention by virtue of having a final order of removal. And, as to the second, it does not appear that Petitioner is subject to mandatory detention under the Laken Riley Act at all. The sole criminal charge that the parties mention in connection to Petitioner is his October 2025 arrest for inflicting corporal injury on a spouse, in violation of California Penal Code section 273.5(A).[6] Opp. at 3. But, for this to implicate mandatory detention,

---

[6] It appears that this charge was dismissed. Reply at 6 n.1. But that, by itself, does not resolve the question, as the Laken Riley Act specifically contemplates finding immigrants subject to mandatory detention just for being charged with (not necessarily convicted of) a qualifying offense.

that crime would need to "*constitute the essential elements* of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or *serious bodily injury* to another person." 8 U.S.C. § 1226(c)(1)(E)(ii) (emphasis added). And Section 273.5 clarifies that no serious bodily injury need be shown: qualifying injuries can be "whether of a minor or serious nature." Cal. Pen. Code § 273.5(D). This Court follows the "categorical approach" commonly applied to other provisions of the Immigration and Nationality Act. *E.g.*, *Taylor v. United States*, 495 U.S. 575, 579 (1990). This Court finds that Petitioner's arrest did not implicate the Laken Riley Act, as the charged (and now dismissed) crime did not constitute the essential elements of any crime that could result in serious bodily injury to another. Put another way, because there is no indication that Petitioner's arrest was necessarily for a crime that caused *serious* bodily injury, the Laken Riley Act does not control.

Third, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Application—to order Respondents to release Petitioner from custody and not redetain him compliance with his due process rights—in effect permits the Government to follow the appropriate steps to reattempt Petitioner's detention.

## IV.    **Conclusion**

For the foregoing reasons, the Application is GRANTED IN PART. Petitioner's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable, and not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. This Court orders Respondents to show cause, in writing, as to why a preliminary
injunction should not issue.

    a.  Respondents' brief is due at 5 PM on Monday, December 22.
Petitioner may file a response brief by Tuesday, December 23.

    b.  The parties may stipulate to a different briefing schedule via
joint stipulation filed by 5 PM on Monday, December 22.
Should the parties wish to extend either briefing deadline past
Friday, December 26, the parties should also stipulate that this
temporary restraining order may remain in effect (without
converting to a preliminary injunction) through this Court's
decision on the preliminary injunction.

    c.  The parties' briefing on the preliminary injunction should
address whether the granting of this TRO renders the PI
request, and the habeas petition itself, moot.

4. The parties shall meet and confer and file a joint status report regarding the Respondents'
compliance with this Order by December 29, 2025.

IT IS SO ORDERED.

Dated: December 19, 2025.

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge