UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-CV-11700-MEMF-E Date: January 6, 2026

Title *M.V.F. v. Ernesto Santacruz Jr. et al*

Present: The Honorable: Maame Ewusi-Mensah Frimpong

| Damon Berry | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order GRANTING Motion for a Preliminary Injunction [Dkt. No. 3]**

Before this Court is Petitioner M.V.F.'s Motion for a Preliminary Injunction. Dkt. No. 3 ("Motion"). This Court granted Petitioner's request for a temporary restraining order and issued an order to show cause as to why a preliminary injunction should not issue. Dkt. No. 10 ("TRO"). The parties have filed responses. Dkt. No. 11 ("Respondents' Brief"); Dkt. No. 12 ("Petitioner's Brief"). For the reasons below, the Motion is GRANTED, and this Court hereby issues a preliminary injunction.

**Factual and Procedural Background**

The factual background of this case is detailed in this Court's TRO. *See* TRO at 2. This Court details the procedural background of the TRO and ensuing developments only to the extent they are relevant to this Court's ruling on the preliminary injunction.

On December 19, 2025, this Court issued the TRO. It ordered Respondents to release Petitioner from custody as soon as reasonably practicable, and to refrain from redetaining him without compliance with applicable law. *Id.* at 15–16. The Court issued an Order to Show Cause as to why a preliminary injunction should not issue. *Id.* at 16. It also instructed the parties to file a joint status report regarding Respondents' compliance with the order. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-CV-11700-MEMF-E Date: January 6, 2026

Title *M.V.F. v. Ernesto Santacruz Jr. et al*

On December 22, 2025, Respondents filed their Response to Order to Show Cause Re: Preliminary Injunction. *See generally* Respondents' Brief. On December 23, 2025, Petitioner filed his Reply to Respondents' Response to OSC Re: Preliminary Injunction. *See generally* Petitioner's Brief. This Court finds the matter appropriate for decision without a hearing.

On December 29, 2025, the parties filed a Joint Status Report Re: Compliance with Temporary Restraining Order. Dkt. No. 13 ("Status Report"). The parties noted that Respondents had complied with the TRO, releasing Petitioner from custody on December 20, 2025. *Id.* at 2.

**Applicable Law**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

**Discussion**

The parties' briefs make two main arguments on whether this Court should issue a preliminary injunction. First, they dispute whether this case is now moot. Respondents' Brief at 1; Petitioner's Brief at 2–8. Second, they maintain their respective positions on the *Winter* factors, which this Court addressed upon the issuance of its TRO. Respondents' Brief at 1; Petitioner's Brief at 1. This Court addresses both arguments below.

*This Case Is Not Moot*

Respondents first argue that Petitioner's habeas petition is now mooted because this Court issued a TRO ordering that Petitioner be released and not redetained absent compliance with the

relevant statutes. Respondents' Brief at 1. Petitioner argues that it is not. Petitioners' Brief at 2–8. This Court finds that Petitioner's habeas petition is not moot.

A case becomes moot—and therefore no longer a 'case' or 'controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)). "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 120 S. Ct. 693, 700 (2000). "Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). This requires the "defendant [to] demonstrate that 'there is no reasonable expectation that the wrong will be repeated." *United States v. W. T. Grant Co.*, 73 S. Ct. 894, 897 (1953). This is a heavy burden. *Id.* The Ninth Circuit has found mootness in the context of a habeas petition where, based on the Government's sworn assurances, the Court was "satisfied that the alleged wrong w[ould] not recur." *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991). Similarly, the Supreme Court has rejected the idea that temporary relief of the sort this Court ordered would moot a habeas petition. In *Nielsen v. Preap*, 586 U.S. 392 (2019), the certified class of petitioners in removal proceedings challenged their mandatory detention, but by the time of class certification, some of the named plaintiffs had obtained bond hearings pursuant to a preliminary injunction—the relief they presumably had been seeking. *Id.* at 403. This was insufficient to render their cases moot: "Unless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention." *Id.*

This Court does not find that its granting of the TRO moots this case. Respondents reason that the TRO's issuance and "the subsequent release of Petitioner from ICE custody" But the TRO, like the requested preliminary injunction, is inherently temporary; neither would outlive this case. *See Nielsen*, 586 U.S. at 403.

The only authority that Respondents cite for the proposition that the TRO moots further proceedings is *Munoz v. Rowland*, 104 F.3d 1096 (9th Cir. 1997). There, Munoz appealed the district court's denial of his petition for a writ of habeas corpus. *Id.* at 1097. Munoz challenged

his indefinite assignment to segregated housing as a violation of his rights under the Fifth, Eighth, and Fourteenth Amendments. *Id.* But, as the appeal was pending, Munoz was released from custody on parole. *Id.* The Court found that, as Munoz had been released from segregated housing, there was "no longer a live case or controversy" to adjudicate. *Id.* Munoz argued that his case was not moot because it rested in part on the allegedly erroneous finding that Munoz was a prison gang associate—and "that finding will probably lead prison officials to assign him to the SHU *if he ever re-enters the California prison system*." *Id.* at 1098. But the theory was premised on "[t]he fact that a nondisciplinary finding about Munoz's gang affiliations may influence a purely administrative classification decision, *should he someday return to person*." *Id.* Munoz did not cite any pending charges or other reason to think that his future arrest, conviction, and prison sentence was imminent. So the Court found that this theory was "far too 'ephemeral to constitute a collateral consequence for mootness purposes.'" *Id.* (citing *Robbins v. Christianson*, 904 F.2d 492, 496 (9th Cir. 1990)).

The facts in *Munoz* are easily distinguished from those that this Court faces today. In *Munoz*, the petitioner had been released on parole. There was no indication that he faced any threat of harm from the allegedly unlawful conduct. And, barring a future hypothetical parole violation or future crime, there was no reason to think he would be imprisoned in the future. So Munoz faced no imminent threat of future harm. Here, in contrast, Petitioner has only been released from detention because this Court ordered that he should. *See* TRO at 15–16. Petitioner has challenged the unlawful *procedures* under which he was detained, but he does not challenge—and this Court does not dispute—that Respondents do not maintain a legitimate *basis* to detain Petitioner. *See id.* at 7 ("Nothing in this Court's ruling today (or Petitioner's requested relief) prevents Petitioner's redetention or removal."). Put another way, Petitioner here (unlike in *Munoz*) has legitimate reason to believe that his future detention is likely. And Respondents cite no change in detention practices that support a finding that a future detention would abide by the procedural requirements that Petitioner alleges were not met. To that end, the likelihood of future harm to Petitioner, absent a preliminary injunction and a final disposition in his favor, is neither remote nor ephemeral.

The Ninth Circuit's holding in *Abdala v. I.N.S.*, 488 F.3d 1061 (9th Cir. 2007), is instructive. In that case, an individual filed a habeas petition challenging his lengthy detention in immigration custody and sought a TRO and preliminary injunction enjoining this deportation to Somalia. 488 F.3d at 1063. He was then deported to Somalia. *Id.* The Ninth Circuit explained that his

deportation did not necessarily moot his habeas claim because he was "in custody" within the meaning of the habeas statute when his habeas petition was filed. It did indicate that "[f]or a habeas petition to continue to present a live controversy after the petitioner's release or deportation, however, there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Id.* at 1064. And it pointed to the fact that a petitioner's release from detention would moot his challenge to the legality of his extended detention. *Id.* (first citing *Riley v. I.N.S.*, 310 F.3d 1253 (10th Cir. 2002); and then citing *Sayyah v. Farquharson*, 385 F.3d 20, 22 n.1 (1st Cir. 2004)).

But here, Petitioner is not challenging his deportation, nor is he challenging an extended detention. He is challenging his redetention without certain due process protections. Just as in one of the cases cited by the Ninth Circuit in *Abdala*—*Riley v. I.N.S.*—this Court is concerned about the potential for Respondents to resume Petitioner's detention under circumstances this Court has found are likely to be unlawful. Unlike in *Riley*, where the record provided "inadequate development and support of this issue," 310 F.3d at 1257, this record is very clear. Respondents do not suggest that they have adjusted their policies to align them with this Court's analysis or that of numerous other district courts. This stands in stark contrast to *Picrin-Peron*, where the government stated *under oath* that the petitioner would be paroled for another year and the Ninth Circuit was—on the basis of that declaration—satisfied that the alleged wrong of indefinite detention would not recur. Respondents have made no such assurances here. 930 F.2d at 776 ("Based on that declaration, we are satisfied that the alleged wrong will not recur."). Accordingly, for this petitioner, the potential for redetention is great, and the stringent standard for mootness due to voluntary cessation has not been met.

Numerous district courts have come to the same conclusion. For example, the district court's decision in *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589 (C.D. Cal. Sep. 26, 2025), is illustrative. There, the respondents similarly argued that the Court's granting of a TRO mooted the habeas case. As that Court concluded:

> This argument strains credulity. Were this so, no court would issue a preliminary injunction following the grant of a TRO ordering a habeas petitioner's release, which is plainly not the case. Given the TRO's expiration on September 26, 2025, the necessity of further injunctive relief maintaining the status quo during the pendency of litigation means the claim is necessarily *not* moot.

*Id.* at *3 n.5 (citations omitted). There are several other decisions in the same vein. *See, e.g.*, *Ortiz Martinez v. Wamsley*, No. 2:25-cv-01822, 2025 WL 2899116, at *3 (W.D. Wash. Oct. 10, 2025); *Cruz v. Lyons*, No. 5:25-CV-02879, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025); *Carlos v. Noem*, No. 2:25-CV-01900, 2025 WL 2998184, at *4 (D. Nev. Oct. 24, 2025); *Marin v. Noem*, No. 2:25-CV-09343-CV (SSCX), 2025 WL 3152261, at *2 (C.D. Cal. Oct. 21, 2025).

Finding that this case is not moot makes sense for another reason: It would be in keeping with the nature of the findings the Court made when issuing the TRO. In issuing the TRO, the Court found only that Petitioner had a *likelihood* of success on the merits. *See* TRO at 9–11. Respondents' proposed reasoning obviates the distinction between preliminary relief and final judgment. And it conflates the standards governing both. Put another way, to treat the TRO as mooting the case would also imply the Court's preliminary findings on *likelihood* of success substitute for final disposition on the merits. As Respondents cite no authority to support this proposition, and this Court is not aware of any, this Court declines to treat the TRO's reasoning as a final disposition.

For the foregoing reasons, the case is not moot.

*Application of the* Winter *Favors Injunctive Relief.*

Having found that the case is not moot, this Court next considers whether new circumstances or arguments change the *Winter* factor analysis. This Court incorporates by reference its TRO's discussion of the *Winter* factors—which serve as the standard both for a TRO and for a preliminary injunction—here. TRO at 8–13.

Petitioner argues that, because Respondents do not contend that Petitioner fails to satisfy any of the *Winter* factors required for a preliminary injunction, "those points should be considered conceded." Petitioner's Brief at 1. Respondents, for their part, "continue to oppose the issuance of a preliminary injunction pursuant to the legal positions stated in the Respondents' brief in opposition to the Petitioner['s] *ex parte* application for a temporary restraining order," and "maintain that those positions warrant denying a preliminary injunction on the merits." Respondents' Brief at 1.

It does not appear to this Court that Respondents have conceded that the *Winter* factors weigh in favor of the issuance of a preliminary injunction. Respondents, after all, expressly maintain that their positions expressed in opposition to the TRO remain unchanged. *See* Dkt. No. 8. But, though those points are not conceded, Respondents offer no new argument, nor do they cite any new factual or legal reasons for this Court to apply the *Winter* factors any differently than it did in the TRO.

Seeing no new facts or law cited that displaces this Court's *Winter* factors analysis in the TRO, then, the TRO's analysis has not been displaced. Accordingly, Petitioner has demonstrated a likelihood of success on the merits, a risk of irreparable harm absent a preliminary injunction, and that an injunction is in the public interest and supported by the balance of the equities. For that reason, a preliminary injunction is warranted.

**Conclusion**

For the reasons stated above, the Motion is GRANTED. For the duration of this action:

1. Respondents are ORDERED that they may not re-detain Petitioner without timely following the procedures in 8 C.F.R. §§ 241.4(*l*)(1) and 241.13(i);
2. Respondents are ORDERED not to remove Petitioner from the country, nor take him from the Central District of California, until the resolution of this case; and
3. The parties are directed to follow the orders of the Magistrate Judge with respect to further proceedings.

IT IS SO ORDERED.

| | |
|---|---|
| | : |
| **Initials of Preparer** | DBE |